

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 361 | DATE | 8/14/2000 |
| CASE TITLE | CHERYL JELINEK vs. METROPOLITAN LIFE INSURANCE CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   The motion for summary judgment [12-1] is granted. Judgment is entered in favor of defendant Metropolitan Life Insurance Co. and against plaintiff Cheryl Jelinek. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | AUG 1 6 2000 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING 00 AUG 15 PM 4:39 | 8/14/2000 date mailed notice | | |
| WS | courtroom deputy's initials | Date/time received in central Clerk's Office | jad mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHERYL JELINEK, | ) |
| Plaintiff, | ) No. 00 C 361 |
| v. | ) Suzanne B. Conlon, Judge |
| METROPOLITAN LIFE INSURANCE CO., | ) |
| Defendant. | ) |

DOCKETED
AUG 16 2000

## MEMORANDUM OPINION AND ORDER

Cheryl Jelinek ("Jelinek") sued Metropolitan Life Insurance Co. ("Met Life") in Illinois state court for failing to pay the proceeds due under a life insurance policy issued to her husband. Met Life removed the case to this court and now moves for summary judgment pursuant to Fed. R. Civ. P. 56.

## BACKGROUND

The court views the background facts in a light most favorable to Jelinek as the non-movant; all disputed facts must be resolved in her favor for purposes of this motion. Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992). On September 16, 1998, Roy Jelinek, Cheryl Jelinek's husband, began to apply for a life insurance policy from Met Life. He completed and signed a "Part A" application that included numerous questions about his health and medical history. Roy Jelinek signed his name beneath the following statements:

> I have read this application and agree that all statements and answers are true and complete to the best of my knowledge and belief. It is also agreed that:
> . . .
> 4. [the policy] will not be in effect unless at the time it is delivered:
>
> > (a) the condition of health of each person to be insured . . . is the same as given in the application;



> and
> (b) no person to be insured . . . has received any treatment from a physician or other practitioner since the date of the application.

The September 16 application was made part of the policy eventually issued to Roy Jelinek.

On September 17, 1998, Roy Jelinek underwent a paramedical exam. Around October 1, 1998, Roy Jelinek began to suffer from a sore throat. He sought treatment for the sore throat from Dr. Aslam Zahir shortly thereafter, and Dr. Zahir referred him to Dr. Michael Colligan. On October 17, 1998, Dr. Colligan examined Roy Jelinek and performed an esophagogastroduodenoscopy (a diagnostic biopsy on the throat) and an esophageal dilation. On October 19, test results revealed Roy Jelinek had esophageal cancer; he was told he had cancer on October 21.

Sometime prior to October 28, 1998, Roy Jelinek told Lateef Farouqui, Met Life's agent, that he had cancer. On October 28, 1998, Dr. Leonard Pomper examined Roy Jelinek as part of the application process for the life insurance policy. Roy Jelinek apparently completed a "Part B" application that same day. Roy Jelinek did not tell Dr. Pomper that he had cancer, nor did he disclose the cancer on the October 28 application. Moreover, Roy Jelinek's responses to questions on the October 28 application affirmatively denied that he had cancer. He answered "no" in response to a question asking whether the applicant had ever received treatment for or been told he had cancer. In response to a question asking the applicant to disclose each instance of examination or treatment by a physician within the past five years, he disclosed only routine "check-up" examinations in 1996, although he had undergone at least two examinations in the preceding month. Roy Jelinek also answered "no" to questions asking whether he had ever had a surgical operation, gone to a hospital for observation or treatment, been aware of any health impairment not otherwise revealed in the application, or undergone medical tests in the previous five years. Roy Jelinek answered these

2

questions in the negative despite knowing that he had esophageal cancer and that he underwent a biopsy and numerous tests in the previous month.

On November 6, 1998, Met Life issued the life insurance policy to Roy Jelinek. Roy Jelinek died from his cancer on May 19, 1999. His death occurred within the policy's two-year contestable period. On May 25, 1999, Cheryl Jelinek submitted a claim to Met Life for the proceeds under the policy. On September 16, 1999, Met Life notified Cheryl Jelinek that the policy was void *ab initio* because her husband made material misrepresentations in the October 28, 1998 application for the policy and failed to disclose his cancer. Met Life contends that if Jelinek's husband had completed the application truthfully, it would not have issued the policy. Met Life refunded all premiums paid for the policy with interest.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARDS

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993).

3

## II.    FAILURE TO DISCLOSE CANCER ON OCTOBER 28, 1998 APPLICATION

Met Life claims it is entitled to rescind the insurance policy because Jelinek's husband made material misrepresentations in the October 28, 1998 application. Section 154 of the Illinois Insurance Code provides in relevant part that

> No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance ... shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.

215 ILCS § 5/154. Under § 154, an insurer can avoid an insurance policy by showing the misrepresentation was material to the risk assumed; it need not also show the misrepresentation was made with an intent to deceive. Johnson-Maday v. Prudential Insurance Co. of America, 657 N.E.2d 1114, 1117 (Ill. App. 1995); Ratcliffe v. International Surplus Lines Insurance Co., 550 N.E.2d 1052 (Ill. App. 1990). "[W]hether an insured's statements are material is determined by whether reasonably careful and intelligent persons would have regarded the facts stated as substantially increasing the chances of the events insured against, so as to cause a rejection of the application." Northern Life Insurance Co. v. Ippolito Real Estate Partnership, 601 N.E.2d 773, 779 (Ill. App. 1992). Incomplete answers or a failure to disclose material information in response to a question in an insurance application may constitute material misrepresentations. Id. "A statement cannot be misleading, however, unless an insurer relies upon it in order to determine its risk." Id. Although materiality is a question of fact, summary judgment is appropriate where the materiality of a misrepresentation is beyond reasonable dispute. Id. at 780.

It should also be noted that an insurance applicant has a duty to act in good faith toward a potential insurer and must attempt to make a "full and complete disclosure of all relevant information."

4

Apolskis v. Concord Life Insurance Co., 445 F.2d 31, 35 (7th Cir. 1971) (applying Illinois law) (citations omitted). An insurer is entitled to truthful responses on an insurance application, and the "applicant cannot be the judge of the materiality of his health problems; he must disclose all information known to him and permit the insurer to determine its materiality." Id.; American County Insurance Co. v. Mahoney, 560 N.E.2d 1035, 1043 (Ill. App. 1990). An insurer is under no obligation to investigate the truthfulness of an applicant's responses. Bageanis v. American Bankers Life Assurance Co. of Florida, 783 F. Supp. 1141, 1146 (N.D. Ill. 1992).

Met Life argues it would not have issued the policy had Jelinek's husband answered the October 28 application truthfully and disclosed his cancer and related treatments. In showing the materiality of a misrepresentation, an insurer may rely on the testimony of an underwriter or one of its employees. Northern Life Insurance Co., 601 N.E.2d at 779-80. Met Life offers the affidavit of Arlette Mooney ("Mooney"), a Met Life assistant vice president whose duties include setting and disseminating underwriting policy guidelines and procedures. According to Mooney, Met Life relied on Jelinek's misrepresentations and would not have issued the policy to Jelinek's husband had he answered the questions truthfully. Mooney Aff. ¶¶ 5-12.

It cannot be reasonably argued that an applicant's cancer is not material to a life insurance contract, and Jelinek does not contest the materiality of the misrepresentations in the October 28, 1998 application. Rather, she speculates that her husband might not have completed and signed the October 28 application. Jelinek's theory is that the October 28 application was completed and signed by someone other than her husband and before her husband knew he had cancer. However, Jelinek fails to sufficiently support this theory with competent evidence. Jelinek first cites her response to Met Life's request for admissions to support her belief that her husband did not complete the October 28

application. Jelinek's Local Rule 56.1(b)(3)(B) statement, Ex. B. However, Jelinek's response simply denies that her husband completed the policy; it does not cite a factual basis for this belief. Jelinek cannot bootstrap this unsupported and speculative denial in her discovery response to create an issue of fact as to whether her husband completed the October 28 application.

Jelinek next cites her deposition testimony to support her claim that it is unclear whether her husband signed the October 28 application, despite the fact it bears the signature "Roy Jelinek." Jelinek testified that in contrast to the illegible manner in which her husband usually signed his last name, the signature on the October 28 application appears to be somewhat legible. She testified it read "at least 'Jelnik' or something." Jelinek Dep. at 37. Jelinek also testified that a circle was used to dot the letter "i" in "Jelinek" on the October 28 application, in contrast to her husband's usual signature. Jelinek Dep. at 34-35. But when asked if she could conclude whether or not it was her husband's signature, Jelinek answered "I don't know." Id. at 34, 37. This speculation cannot ward off summary judgment. Standing alone, Jelinek's equivocation is insufficient to create a genuine issue of fact as to whether Jelinek signed the application.[1] Moreover, Jelinek did not witness the signing of the October 28 application. However, Dr. Pomper was present when Jelinek's husband signed the application. He testified that he was "pretty sure" Roy Jelinek signed the application because it is his standard practice to ensure that an applicant signs the application and to watch the applicant sign. Pomper Dep. at 33-34.

In sum, Jelinek fails to offer evidence creating a genuine issue of fact as to whether her husband completed and signed the October 28 application. Nor does she even suggest, much less

---

[1] Jelinek does not offer testimony by a handwriting expert to challenge the authenticity of the signature on the October 28 application.

6

show with record evidence, who might have completed and signed the application if not her husband. Accordingly, the court must conclude Roy Jelinek completed and signed the materially misleading October 28 application. Jelinek responds that even if her husband failed to disclose his cancer on the October 28 application, Met Life knew about the cancer because her husband told Lateef Farouqui, Met Life's agent, of the cancer. Under Illinois law, the knowledge of an insurer's agent will usually be imputed to the insurer. Logan v. Allstate Life Ins. Co., 312 N.E.2d 416, 421 (Ill. App. 1974); Kioutas v. Life Insurance Co. of Virginia, 35 F. Supp.2d 616, 625 (N.D. Ill. 1998); New England Mutual Life Ins. Co. v. Bank of Illinois, 994 F. Supp. 970, 978 (N.D. Ill. 1998). However, courts refuse to impute the agent's knowledge to the insurer "where the applicant has acted in bad faith, either on his own or in collusion with the insurer's agent." Logan, 312 N.E.2d at 421; Kioutas, 35 F. Supp.2d at 625; New England Mutual, 994 F. Supp. at 978. In particular, courts will not impute the agent's knowledge to the insurer where the applicant makes material representations on a insurance application. Logan, 312 N.E.2d at 421; Kioutas, 35 F. Supp.2d at 625; New England Mutual, 994 F. Supp. at 978-80. Roy Jelinek declined to disclose his cancer on the October 28 application. Because of this material misrepresentation, Farouqui's knowledge of Jelinek's cancer cannot be imputed to Met Life.[2] Accordingly, summary judgment must be granted in favor of Met Life.

## III.   THE SEPTEMBER 16 APPLICATION

As an alternative basis for summary judgment, the court finds that Met Life is entitled to rescind the policy under provisions in the September 16, 1998 application even if Jelinek's husband

---

[2] This result is reinforced reference to the policy itself. Paragraph 3 of the September 16 application provides "[n]o information about any person to be insured will be considered to have been given to [Met Life] unless it is stated in this application."

did not complete or sign the October 28 application. First, paragraph 4(a) of the September 16 application provided that the policy does not take effect "unless at the time it is delivered . . . the condition of health of each person to be insured . . . is the same *as given* in the application." (emphasis added). From the undisputed facts, it is clear that the condition of Roy Jelinek's health at the time the policy was delivered in November 1998 was different from the health disclosed in the September 16 application. The condition "given" in the September 16 application did not disclose Roy Jelinek's cancer, but as of November 1998, he knew he had cancer. Cheryl Jelinek asserts Met Life cannot show that her husband's cancer existed at the time he completed the September 16 application. However, Met Life need not show this. Under the policy, it need only show that the Jelinek's health as of November 1998 was not the same as that disclosed in the September 16 application.

Second, Paragraph 4(b) of the September 16, 1998 application provides that the policy does not take effect if the applicant "has received any treatment from a physician or other practitioner since the date of the application." The undisputed facts show Jelinek's husband saw Dr. Zahir for treatment of a sore throat in October 1998 and that he went to a hospital on October 17, 1998 for observation and a throat biopsy. Jelinek responds that her husband did not receive treatment for *cancer* between September 16 and the issuance of the policy. However, paragraph 4(b) does not void the policy only for the treatment of cancer; it voids the policy if the applicant receives "any treatment." Accordingly, Met Life is entitled to rescind the policy and summary judgment must be granted in its favor.

8

## CONCLUSION

Met Life's motion for summary judgment is granted.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

August 14, 2000